MICHAEL JAY BERGER (State Bar # 100291)
LAW OFFICES OF MICHAEL JAY BERGER
9454 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212-2929
Telephone:   (310) 271-6223
Facsimile:   (310) 271-9805
Michael.Berger@bankruptcypower.com

Attorneys for Debtor and Plan Proponent
Thomas St. John, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | CASE NO.: 2:25-bk-11641-BR |
| | Chapter 11 (Subchapter V) |
| Thomas St. John, Inc., | **DEBTOR'S DISCLOSURE STATEMENT DESCRIBING SUBCHAPTER V CHAPTER 11 PLAN OF REORGANIZATION** |
| Debtor-in-Possession. | |
| | Status Hearing |
| | Date:   May 13, 2025 |
| | Time:   10:00 a.m. |
| | Ctrm:   1668 |
| | 255 E. Temple Street |
| | Los Angeles, CA 90012 |

///
///
///
///
///

## Table of Contents

I.    INTRODUCTION ................................................................................. 5

A.    PURPOSE OF THIS DOCUMENT ................................................ 5

B.    DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN
CONFIRMATION HEARING ............................................................ 6

C.    TIME AND PLACE OF THE CONFIRMATION HEARING ............. 7

D.    DEADLINE FOR OBJECTION TO THE CONFIRMATION OF THE PLAN ....... 7

E.    IDENTITY OF PERSON TO CONTACT FOR MORE INFORMATION
REGARDING THE PLAN ................................................................ 7

F.    IMPORTANT NOTICES AND CAUTIONARY STATEMENTS ............ 7

II.    BACKGROUND ................................................................................. 8

A.    DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS ...... 8

B.    PRINCIPALS/AFFILIATES OF DEBTOR'S BUSINESS ................... 10

C.    MANAGEMENT OF THE DEBTOR BEFORE AND AFTER THE
BANKRUPTCY ................................................................................. 10

EVENTS LEADING TO THE CHAPTER 11 FILING ........................... 10

G.    SIGNIFICANT EVENTS DURING THE BANKRUPTCY ............... 10

i.    *Bankruptcy Proceedings* ....................................................... 10

ii.    *Claims Objections* ............................................................... 11

iii.    *Adversary Proceedings* ...................................................... 11

iv.    *Procedures Implements to Resolve Financial Problems* ...... 11

v.    *Current and Historical Financial Conditions* ..................... 12

III.    SUMMARY OF THE PLAN OF REORGANIZATION ....................... 12

A.    GENERAL OVERVIEW ................................................................ 12

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

B.  UNCLASSIFIED CLAIMS .................................................................... 12

    i.  ADMINISTRATIVE EXPENSES ............................................ 12

    ii.  PRIORITY TAX CLAIMS ..................................................... 13

C.  CLASSIFIED CLAIMS ...................................................................... 14

    Class 2 – Secured Claims ................................................................ 14

    Class 3 - General Unsecured Claims .............................................. 15

    Class 4 - Interest Holders .............................................................. 15

D.  MEANS OF PERFORMING THE PLAN .......................................... 15

    i.  Funding for the Plan ................................................................. 15

    ii.  Management of the Reorganized Debtor ............................... 16

    iii.  Disbursing Agent .................................................................... 16

E.  RISK FACTORS ................................................................................... 16

F.  SECTION 1111(B) ELECTION .............................................................. 16

G.  OTHER PROVISIONS OF THE PLAN ................................................ 17

    1.  EXECUTORY CONTACTS AND UNEXPIRED LEASES ..................... 17

        i.  Assumptions ........................................................................ 17

        ii.  Rejections .......................................................................... 17

H.  TAX CONSEQUENCES OF THE PLAN ............................................... 17

I.  CONFIRMATION REQUIREMENTS AND PROCEDURES ................. 18

    1.  WHO MAY VOTE OR OBJECT ...................................................... 18

        i.  Who May Object to Confirmation of the Plan ..................... 18

        ii.  Who May Vote to Accept or Reject the Plan ..................... 18

        a.  What is an Allowed Claim or Interest ............................. 18

3

b.   *What is an Impaired Claim or Interest* ........................................................... 19

iii.   *Who is Not Entitled to Vote* ...................................................................... 19

iv.   *Who Can Vote in More Than One Class* ........................................................ 20

v.   *Votes Necessary to Confirm the Plan* ........................................................... 20

vi.   *Votes Necessary for a Class to Accept the Plan* ............................................ 20

vii.   *Treatment of Non-Accepting Classes* .......................................................... 20

2.   **LIQUIDATION ANALYSIS** ........................................................................ 21

3.   **FEASIBILITY** .......................................................................................... 22

J.   **EFFECT OF CONFIRMATION OF PLAN** ................................................... 22

1.   **EFFECTIVE DATE** .................................................................................. 22

2.   **DISCHARGE** ........................................................................................... 23

3.   **REINVESTING OF PROPERTY IN THE DEBTOR** ................................... 23

4.   **MODIFICATION OF THE PLAN** ............................................................. 23

5.   **POST-CONFIRMATION STATUS REPORT** ............................................ 23

6.   **POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF
REORGANIZED DEBTOR'S PROFESSIONALS** ........................................ 24

7.   **POST-CONFIRMATION CONVERSION/DISMISSAL** ............................... 25

8.   **FINAL DECREE** ...................................................................................... 25

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

## I.    INTRODUCTION

Debtor, Thomas St. John, Inc. (the "Debtor"), Debtor-in-Possession in the above-referenced Chapter 11 case, commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. §101 et seq. (the "Bankruptcy Code") on February 28, 2025 as a Subchapter V case.  It is hereinafter referred to as the "Debtor." This document is the Disclosure Statement in Support of Chapter 11 Plan of Reorganization (the "Disclosure Statement"). Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a Chapter 11 Plan of Reorganization. The Plan may provide for the Debtor to reorganize by continuing to operate.  Debtor is the proponent (the "Proponent") of the Chapter 11 Plan of Reorganization (the "Plan") sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

In summary, this is a reorganizing plan that provides for payment to holders of allowed claims over time. The timing of plan payments to particular creditor groups will depend upon their classification under the Plan. ***The Effective Date of the Plan shall be the first business day that is fourteen (14) calendar days after the entry of the order confirming the Plan, with payment beginning by the first day of the following month.***

### A. **PURPOSE OF THIS DOCUMENT**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1) WHO CAN VOTE OR OBJECT;**

**(2) WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT**

**COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN
LIQUIDATION;**

**(3) THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS
DURING THE BANKRUPTCY;**

**(4) WHAT THINGS THE COURT WILL LOOK AT TO DECIDE
WHETHER OR NOT TO CONFIRM THE PLAN;**

**(5) WHAT IS THE EFFECT OF CONFIRMATION;**

**(6) WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own legal counsel to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires the Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court (the "Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B. DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN
CONFIRMATION HEARING**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

## C. <u>TIME AND PLACE OF THE CONFIRMATION HEARING</u>

The hearing where the Court will determine whether or not to confirm the Plan will take place on **TBD** in Courtroom 1668 of the United States Bankruptcy Court located at 255 E. Temple Street, Los Angeles, CA 90012.

## D. <u>DEADLINE FOR OBJECTION TO THE CONFIRMATION OF THE PLAN</u>

Objections to the confirmation of the Plan must be filed with the Court and served so that any objections are actually received by counsel for the Debtor by **TBD**.

## E. <u>IDENTITY OF PERSON TO CONTACT FOR MORE INFORMATION REGARDING THE PLAN</u>

Any interested party desiring further information about the Plan should contact counsel for the Debtor: Michael Jay Berger or Sofya Davtyan, with the Law Offices of Michael Jay Berger, 9454 Wilshire Boulevard, 6th Floor, Beverly Hills, California 90212, Telephone: (310) 271-6223, or by electronic mail at Michael.Berger@bankruptcypower.com or Sofya.Davtyan@bankruptcypower.com.

## <u>DISCLAIMER</u>

The financial data relied upon in formulating the Plan is based on the Debtor's books and records and historical financial statements. Debtor represents that the information contained in this Disclosure Statement is true and correct to the Debtor's best knowledge. The Court has not yet determined whether the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## F. <u>IMPORTANT NOTICES AND CAUTIONARY STATEMENTS</u>

The liquidation analysis, estimates and other financial information referenced herein, or attached as exhibits hereto, have been developed by the Debtor with the assistance of its professional advisors. Although these professional advisors assisted in the preparation of this Disclosure Statement, in doing so such professionals relied upon factual information and assumptions regarding financial, business, and accounting data

provided by the Debtor and third parties, all of which information has not been audited. *The Debtor's professional advisors have not independently verified such information and, accordingly, make no representations as to its accuracy.* Moreover, although reasonable efforts have been made to provide accurate information, the Debtor cannot warrant or represent that the information in this Disclosure Statement, including any and all financial information, is without inaccuracy or omission.

**No entity may rely upon the Plan or this Disclosure Statement, or any of the accompanying exhibits, for any purpose other than to determine whether to vote in favor of or against the Plan.** Nothing contained in such documents constitutes an admission of any fact or liability by any party, and no such information may be deemed evidence of the tax or other legal effects of the Plan on holders of claims or interests in these cases.

## II.    BACKGROUND

### A. DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS

The Debtor was formed on October 8, 2009. Thomas St. John Group, Inc. holds a 100% equity interest in the Debtor. The Debtor provides business management, tax and accounting services to a client base consisting of high-net-worth individuals and businesses.

Debtor does not own any real property. As of the petition date, the Debtor was a party to the following two lease agreements: (1) lease for premises located at 10877 Wilshire Blvd., Los Angeles, CA 90024 ("Wilshire Lease") and (2) lease for premises located at 16830 Ventura Blvd., Encino, CA 91436 ("Encino Lease"). Debtor entered into Lease Rejection Stipulations with both Wilshire and Encino landlords. It is currently conducting its operation remotely.

Debtor's secured creditor is Connection Financial Services with a UCC lien against Microsoft display solution, services and partes, accessories, attachments, with an estimated claim amount of $15,196.00.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

The IRS filed a priority claim in the approximate amount of $4.1 million dollars (Claim No. 1-1). The claim is based on estimated taxes for unfiled WT-FICA, and Corporate and Foreign tax returns. Debtor is working to get the unfiled forms filed and anticipates that the claim will be significantly reduced.

Franchise Tax Board filed a priority claim in the approximate amount of $2,531.33 (Claim No. 2).

Tipalti, Inc. filed a priority claim in the amount of $12,500.00 (Claim No. 11) as a claim entitled to priority administrative claim per 11 U.S.C. Section 507(a)(2).

Los Angeles County Treasurer and Tax Collector filed a priority claim in the amount of $281.00 (Claim No. 15).

The list of the property of the estate and the valuation as of the Plan Confirmation Date is attached hereto as **Exhibit A.**

The list of the secured creditors is attached hereto as **Exhibit B-1.**

Debtor does not have any priority unsecured claims. See **Exhibit B-2.**

Debtor's general unsecured creditors hold claims with an estimated aggregate amount of $11,268,610.84 (includes scheduled and filed claims, some of which the Debtor disputes and will be filing an objection to). The list of the unsecured nonpriority general creditors is attached hereto as **Exhibit B-3.**

The Debtor's 5-year projected Income and Expense Statement is attached hereto as **Exhibit-C.** The Debtor represents that the information contained in this Disclosure Statement is true and correct to the Debtor's best knowledge. The Court has not yet determined whether the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

Debtor's summary of the monthly operating reports is attached hereto as **Exhibit-D.**

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

**B. PRINCIPALS/AFFILIATES OF DEBTOR'S BUSINESS**

Debtor's CEO, Thomas St. John does not hold a pre-petition or a post-petition claim against the Debtor. The equity interest holder of the Debtor is Thomas St. John Group, Inc. It will retain its interest in the Debtor after the confirmation of the Plan. See **Exhibit B-4.**

**C. MANAGEMENT OF THE DEBTOR BEFORE AND AFTER THE BANKRUPTCY**

The management of the Debtor has remained the same before and after the bankruptcy filing. Thomas St. John Group, Inc. is the entity that runs the Debtor's business and is responsible for the decision-making and other essential tasks to maintain the operation without any interference. The proposed Disclosure Statement and Plan do not modify the rights and ownership interest of Thomas St. John Group, Inc.

**EVENTS LEADING TO THE CHAPTER 11 FILING**

The events that caused the present bankruptcy filing are the following three pending disputes:

D. *Wayne Kamemoto v. Thomas St. John, Inc.* (pending arbitration for Employment Termination claim);

E. *Nonyelum Nwasike v. Thomas St. John, Inc.* Complaint for Breach of Contract, Promissory Estoppel, Whistleblower Retaliation, Wrongful Termination, etc… Case No: 21STCV17058.

F. *Carla Davoody v. Thomas St. John, Inc.* Complaint for Breach of Settlement Agreement. Case No: 25STCV04143.

**G. SIGNIFICANT EVENTS DURING THE BANKRUPTCY**

i. *Bankruptcy Proceedings*

Debtor initiated the presented bankruptcy by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on February 28, 2025 [docket no.: 1].

On March 7, 2025, Debtor filed a Motion to Set Last Day to File Claims [docket no.: 11], which was approved on March 10, 2025 [docket no.: 12]. The Notice of Bar Date was served on March 11, 2023 [docket no.: 13].

On March 14, 2024, Debtor filed its schedules and Statement of Financial Affairs [docket no.: 15].

On March 18, 2025, Debtor filed an addendum to the voluntary petition electing a Subchapter V status [docket no.: 16].

Gregory K. Jones was appointed as Subchapter V Trustee [docket no.: 18].

On March 21, 2024, Debtor filed an Application to Employ Law Offices of Michael Jay Berger as Debtor's general bankruptcy counsel [docket no.: 21]. The order granting Application to Employ was entered on April 21, 2025 [docket no.: 38].

On April 17, 2025, Debtor filed a Stipulation to Reject Lease with Center West, LP for the Property located at 10877 Wilshire Blvd., Suite 1550, Los Angeles, CA 90024 ("Stipulation to Reject Wilshire Lease") [docket no.: 35]. The order approving Stipulation to Reject Wilshire Lease was entered on April 25, 2025 [docket no.: 45].

On April 22, 2025, Debtor filed its first monthly operating report for March 2025 [docket no.: 39]. The report shows a profit of $132,278 for March 2025.

On April 24, 2025, a Motion to Extend Bar Date for Trustee to File Proof of Claim was filed by an Interested Party David K. Gottlieb, Chapter 7 Trustee for the Bankruptcy Estate of Philip M. Lawrence, II [docket no.: 41, as amended by docket no 43]. The hearing is set for May 20, 2025 at 10:00 a.m.

ii.    *Claims Objections*

The claims bar date was April 25, 2025. The court has not set a deadline for filing any objections to the claims.

iii.    *Adversary Proceedings*

None.

iv.    *Procedures Implements to Resolve Financial Problems*

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

Debtor filed this case in order to reduce its obligations, resolve the pending lawsuits, and to reorganize.

v.    *Current and Historical Financial Conditions*

Debtor's income and expense projection for the five-year period of the Plan is attached hereto as **Exhibit C.**

## III.    SUMMARY OF THE PLAN OF REORGANIZATION

### A. GENERAL OVERVIEW

As required by the Bankruptcy Code, the Plan separates claims and interests into various categories and classes according to the nature and legal rights associated with such claims and interests. The Plan designates which classes are impaired and which classes are unimpaired. The Plan also describes the treatment each class will receive under the Plan. The Proponent will ask the Bankruptcy Court to confirm this Plan pursuant to 11 U.S.C. §1129(b) on any impaired classes if any of these classes do not vote to accept the Plan and if the Plan can otherwise be confirmed.

### B. UNCLASSIFIED CLAIMS

Certain types of claims are not placed into voting classes; instead, they are unclassified. Holders of unclassified claims are not considered impaired and not entitled to vote on the Plan; rather the holders of unclassified, unimpaired claims and interests are automatically entitled to specific treatment provided for them in the Bankruptcy Code.

The following categories of claims are neither classified nor impaired under the Plan and are not entitled to vote on the Plan:

### i.    *ADMINISTRATIVE EXPENSES*

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Bankruptcy Code §507(a)(1). The Bankruptcy Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. The following is an estimate of the §507(a)(1) administrative claims that will be incurred and unpaid (net of

any retainers received) through the Effective Date of the Plan and their treatment under this Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| Michael Jay Berger (Debtor's bankruptcy counsel) | $75,000.00 (estimated); subject to court approval. | To be paid upon approval of the fee application, unless agreed otherwise. |
| Gregory K. Jones (Subchapter V Trustee) | $10,000.00 (estimated); subject to court approval | To be paid upon approval of the fee application, unless agreed otherwise. |
| Tipalti, Inc. | $12,500.00 [POC #11]; 11 U.S.C. Section 507(a)(2) | To be paid on the effective date. |
| Center West | $63,480.37 (post-petition administrative rent claim) | To be paid on the effective date. |

## Court Approval of Fees Required

Requests by professionals for payment of fees and costs are generally subject to review and approval by the Court. Fees of the Court Clerk and the Office of the United States Trustee are not subject to Court approval and may be paid in the ordinary course of business when due.

### ii.    PRIORITY TAX CLAIMS

Priority tax claims are certain unsecured income, employment and other taxes described by §507(a)(8). The Code requires that each holder of such a §507(a)(8) priority

tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five (5) years from the petition date.

Debtor's priority creditors, based on filed claims, are:

(1) IRS with an estimated $4.1 million dollar claim (Claim No. 1-1) which is based on estimated taxes for unfiled WT-FICA, and corporate and federal tax returns. Debtor is working to get the unfiled forms filed and anticipate that the claim will be significantly reduced. The reduced priority amount will be paid in full within 5 years from the petition date at the applicable interest rate.

(2) Franchise Tax Board with a priority claim in the amount of $2,531.33 [POC #2]. Debtor proposes to pay FTB's priority claim in full at 7% interest rate over 12 months, with the first amortized payment of $219.03 due on the Effective Date, followed by 11 consecutive payments thereafter, each in the amount of $219.03 until the priority claim is paid in full.

(3) Los Angeles County Treasurer and Tax Collector with a priority claim in the amount of $281.00 [POC #15]. Debtor proposes to pay the $281.00 priority claim in one lump-sum payment on the Effective Date.

See **Exhibit B-2** for the list of priority tax claims and their treatment under the Plan.

### C. CLASSIFIED CLAIMS

#### Class 2 – Secured Claims

**CLASS 2**

**Claim/Collateral:** Connection Financial Services ("CFS") holds a claim secured by UCC-1 Financing Statement filed against certain Microsoft display solutions software, parts, accessories, attachments for an estimated claim of $15,196.00 (the "Property").

**Impaired/Not Impaired:** Impaired.

**Treatment:** Debtor proposes to pay CFS's $15,196.00 secured claim in full over 5 years from the petition date. The first monthly payment of $253.26 will be due on the Effective Date, followed by 59 consecutive payments, each in the amount of $253.26 thereafter until the claim is paid in full.

### Class 3 - General Unsecured Claims

**Claim:**

General unsecured claims are unsecured claims not entitled to priority under Code §507(a). In the present case, the Debtor estimates that there are approximately $11,268,610.84[1] in general unsecured debts. **See Exhibit B-3 for the list of general unsecured creditors.**

**Impaired/Not Impaired:** Impaired.

**Treatment:** Each holder of a Class 3 allowed claim will receive a pro rata share of the disposable income available to fund the Plan, after the payment of all allowed administrative claims and payment of all allowed priority claims. Given that the IRS's priority claim is subject to dispute by the Debtor, once the unfiled returns are processed, Debtor anticipates the priority obligation to be substantially reduced.

An estimated sum of $364,158.37 will be available in the "Pot" for distribution on the Effective Date.

### Class 4 - Interest Holders

Thomas St. John Group, Inc. owns 100% equity interest in the Debtor. Thomas St. John Group, Inc. will retain its 100% equity ownership interest in the Debtor following the plan confirmation. See **Exhibit B-4.**

### D. MEANS OF PERFORMING THE PLAN

   i.   *Funding for the Plan*

---

[1] Total includes both scheduled and filed claims, some of which the Debtor disputes and will be filing objections to.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

The Debtor will fund the Plan from the continued operation of its business. See **Exhibit-C.**

ii.   *Management of the Reorganized Debtor*

Management of the Reorganized Debtor will remain with Thomas St. John Group, Inc.

iii.   *Disbursing Agent*

Thomas St. John shall act as the disbursing agent for the purpose of making the distributions to all classes provided for under the Plan. He shall not be compensated for performing these services.

Cash payments made pursuant to the Plan shall be in U.S. dollars by checks drawn on domestic bank selected by the Disbursing Agent.

Any distributions under the Plan that are unclaimed or undeliverable for a period of six (6) months after distribution thereof shall be re-vested in the Reorganized Debtor, free of any restrictions thereon, and any entitlement of any holder of any claim to such distribution shall be extinguished and forever barred.

## E.   **RISK FACTORS**

Since the Plan contemplates payments to certain classes of creditors over time following the Effective Date, it is possible that the Debtor will not have sufficient cash flow to pay all of the obligations created under the Plan. The Debtor does not anticipate having financial problems with meeting its obligations under the proposed plan because the income to fund the plan will be coming from the continued operation of the Debtor's business.

## F.   **SECTION 1111(B) ELECTION**

Under §1111(b) of the Bankruptcy Code, a creditor holding a nonrecourse claim or a partially secured creditor may elect to be considered a full recourse creditor. Holders of secured claims are advised to consult their own counsel to evaluate whether or not it is in their best interest to make the election. Federal Rule of Bankruptcy Procedure 3014

states that such election must be made prior to the conclusion of the hearing on the

Disclosure Statement.

### G. **OTHER PROVISIONS OF THE PLAN**

1. EXECUTORY CONTACTS AND UNEXPIRED LEASES

   *i.    Assumptions*

The Debtor is a party to a service contract with Tipalti, Inc. which does the

Debtor's account payable processing and international payments processing.

   *ii.    Rejections*

On the petition date, the Debtor was a party to the following two lease agreements:

(1) lease for premises located at 10877 Wilshire Blvd., Los Angeles, CA 90024

("Wilshire Lease") and (2) lease for premises located at 16830 Ventura Blvd., Encino,

CA 91436 ("Encino Lease").  Debtor entered into Lease Rejection Stipulations with both

Wilshire and Encino landlords.  It is currently conducting its operation remotely.

RETENTION OF JURISDICTION

The Court will retain jurisdiction over this bankruptcy case until a final decree is

entered by the Court. At that time the bankruptcy case will be closed.

### H. **TAX CONSEQUENCES OF THE PLAN**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE

PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR

OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following

disclosure of possible tax consequences is intended solely for the purpose of alerting

readers about possible tax issues this Plan may present to the Debtor. The Proponent

CANNOT and DOES NOT represent that the tax consequences contained below are the

only tax consequences of the Plan because the Tax Code embodies many complicated

rules that make it difficult to state completely and accurately all the tax implications of

any action.

The Debtor does not anticipate that confirmation of the Plan will have a significant or material effect on its tax liability. The Debtor makes no representations regarding the potential tax consequences to creditors.

## I. **CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are not the only requirements for confirmation.

### 1. **WHO MAY VOTE OR OBJECT**

i.   *Who May Object to Confirmation of the Plan*

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

ii.   *Who May Vote to Accept or Reject the Plan*

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified as an impaired class.

a.   *What is an Allowed Claim or Interest*

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be

allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

**THE BAR DATE FOR FILING PROOFS OF CLAIM IN THIS CASE WAS ON APRIL 25, 2025**

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult **Exhibits "B-1 through B-3"** to see how the Debtor has characterized your claim or interest.

b.  *What is an Impaired Claim or Interest*

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that Class 2 and Class 3 are impaired and that holders of claims in these classes are therefore entitled to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponents have incorrectly characterized the class.

iii.  *Who is Not Entitled to Vote*

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant

19

to § 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to § 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

    iv.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

    v.    *Votes Necessary to Confirm the Plan*

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as is discussed later.

    vi.    *Votes Necessary for a Class to Accept the Plan*

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the shareholders of such class that actually voted, voted to accept the Plan.

    vii.    *Treatment of Non-Accepting Classes*

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the

manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of §1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

## 2. **LIQUIDATION ANALYSIS**

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In a Chapter 7 case, a trustee is appointed and entitled to compensation from the bankruptcy estate in an amount not to exceed 25% on the first $5,000 of all moneys disbursed, 10% on any amount over $5,000 but less than $50,000, 5% on any amount over $50,000 but not in excess of $1 million, and 3% on all amounts over $1 million.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the

Plan as such holders would receive under a Chapter 7 liquidation.

Given the IRS' priority claim for an estimated $4.1 million which amount should be substantially reduced once the unfiled returns are completed and filed, the liquidation analysis cannot be completed at this time. Once the IRS' claim is amended, the Plan will be supplemented with the liquidation analysis to satisfy the Best Interest Test.

### 3. **FEASIBILITY**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two (2) important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. Debtor will have sufficient funds from the continued operation of the business to make the required payments on the Effective Date. See the attached income and expense projections which contain details on these payments, **Exhibit C.**

The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required plan payments. The Debtor believes that it will have sufficient over the life of the Plan in order to meet its obligations under the Plan. Debtor has provided a budget of its projected income and expenses in **Exhibit C.**

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

### J. **EFFECT OF CONFIRMATION OF PLAN**

### 1. **EFFECTIVE DATE**

The Effective Date of the Plan shall be the first business day that is fourteen (14) calendar days after the entry of the order confirming the Plan, with payment beginning by the first day of the following month.

## 2. DISCHARGE

If Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of the Plan, to the extent specified in § 1141(d)(a)(A) of the Code. If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan will not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payment due within the first 3 years of the Plan.

## 3. REINVESTING OF PROPERTY IN THE DEBTOR

Except as provided elsewhere in the Plan, the confirmation of the Plan re-vests all of the property of the estate in the Debtor.

From and after the Effective Date, the Debtor may operate and may use, acquire, and dispose of property, and compromise and settle any claims or causes of actions without supervision or consent of the Bankruptcy Court and is free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Debtor shall have, retain, reserve and be entitled to assert all claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the Petition Date as fully as if the Debtor's bankruptcy case had not been commenced; and all of the Debtor's legal and equitable rights respecting any such claim which is not specifically waived, extinguished, relinquished or transferred by the Plan may be asserted after the Effective Date.

## 4. MODIFICATION OF THE PLAN

Debtor may modify the Plan pursuant to 11 U.S.C. §1127.

## 5. POST-CONFIRMATION STATUS REPORT

23

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION .

Within one hundred and twenty (120) days following the entry of the Plan Confirmation Order, the Reorganized Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty (20) largest unsecured creditors, and those parties who have requested special notice after the Effective Date. Further status reports shall be filed every one hundred and twenty (120) days or as directed by the Court and served on the same entities.

### 6. POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF REORGANIZED DEBTOR'S PROFESSIONALS

After the Confirmation Date, the Reorganized Debtor may employ, without notice, hearing, or order of the Bankruptcy Court, such attorneys, accountants, and other professionals (the "Post-confirmation Professionals") as it may desire to render services on such terms as it deems reasonable. With respect to services rendered by the Post-Confirmation Professionals, the Reorganized Debtor shall be authorized to pay for such services, related costs, and expenses without notice, hearing, or order of the Bankruptcy Court.

In the event there is a default by Debtor in its payment of fees to Law Offices of Michael Jay Berger ("Berger") or Subchapter V Trustee ("Trustee"), Berger and Trustee will give the Debtor notice of the default by electronic mail and advise the Debtor that it has ten (10) days to cure the default. If Debtor does not cure within that time period, Berger and Trustee will be permitted to accelerate the balance due at the time and enforce the order of this Court approving the fees by whatever means are available to them, including the costs and expenses related to the recording of the order and costs of collection. Berger and Trustee shall not be required to get any further approval of this Court for payments related to outstanding fees.

Berger, Trustee, and Debtor are permitted to communicate and agree to payment of Berger's and Trustee's administrative claim on an expedited basis.

### 7. **POST-CONFIRMATION CONVERSION/DISMISSAL**

A creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within one hundred and eighty (180) days after the entry of the order of confirmation.

### 8. **FINAL DECREE**

The Debtor reserves the right to request an entry of the Final Decree once the Plan has been substantially consummated.

Dated: April 29, 2025                                   LAW OFFICES OF MICHAEL JAY BERGER

By:    /s/ Michael Jay Berger
       MICHAEL JAY BERGER
       Attorneys for Debtor and Plan Proponent,
       Thomas St. John, Inc.

1
2
3
4
5

## DECLARATION OF THOMAS ST. JOHN

6

I, Thomas St. John, declare as follows:

7

1.      I am the CEO of the Debtor and Debtor-In-Possession, Thomas St. John,

8
9
Inc. (the "Debtor").  I am over the age of eighteen.  I have personal knowledge of the

facts set forth herein, and if called as a witness, I could and would testify competently

10
11
with respect thereto.  Where facts are alleged upon information and belief, I believe them

to be true.

12
13
2.      I have reviewed the information within the Disclosure Statement, including

14
all financial information.

15
3.      I believe that all information contained in the Disclosure Statement is true

16
and correct and fairly presented, to the best of my knowledge.

17
4.      The Debtor was formed on October 8, 2009.

18
5.      Thomas St. John Group, Inc. holds a 100% equity interest in the Debtor.

19
6.      The Debtor provides business management, tax and accounting services to

20
a client base consisting of high-net-worth individuals and businesses.

21
7.      Debtor does not own any real property.  As of the petition date, the Debtor

22
was a party to the following two lease agreements: (1) lease for premises located at

23
10877 Wilshire Blvd., Los Angeles, CA 90024 ("Wilshire Lease") and (2) lease for

24
premises located at 16830 Ventura Blvd., Encino, CA 91436 ("Encino Lease").  Debtor

25
entered into Lease Rejection Stipulations with both Wilshire and Encino landlords.  It is

26
currently conducting its business operation remotely.

27
8.      The events that caused the present bankruptcy filing are the following three

28
pending disputes:

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

- *Wayne Kamemoto v. Thomas St. John, Inc.* (pending arbitration for Employment Termination claim);
- *Nonyelum Nwasike v. Thomas St. John, Inc.* Complaint for Breach of Contract, Promissory Estoppel, Whistleblower Retaliation, Wrongful Termination, etc… Case No: 21STCV17058.
- *Carla Davoody v. Thomas St. John, Inc.* Complaint for Breach of Settlement Agreement. Case No: 25STCV04143.

9.    On March 7, 2025, Debtor filed a Motion to Set Last Day to File Claims [docket no.: 11], which was approved on March 10, 2025 [docket no.: 12]. The Notice of Bar Date was served on March 11, 2023 [docket no.: 13].

10.    On March 14, 2024, Debtor filed its schedules and Statement of Financial Affairs [docket no.: 15].

11.    On March 18, 2025, Debtor filed an addendum to the voluntary petition electing a Subchapter V status [docket no.: 16].

12.    Gregory K. Jones was appointed as Subchapter V Trustee [docket no.: 18].

13.    On March 21, 2024, Debtor filed an Application to Employ Law Offices of Michael Jay Berger as Debtor's general bankruptcy counsel [docket no.: 21]. The order granting Application to Employ was entered on April 21, 2025 [docket no.: 38].

14.    On April 17, 2025, Debtor filed a Stipulation to Reject Lease with Center West, LP for the Property located at 10877 Wilshire Blvd., Suite 1550, Los Angeles, CA 90024 ("Stipulation to Reject Wilshire Lease") [docket no.: 35]. The order approving Stipulation to Reject Wilshire Lease was entered on April 25, 2025 [docket no.: 45].

15.    On April 22, 2025, Debtor filed its first monthly operating report for March 2025 [docket no.: 39]. The report shows a profit of $132,278 for March 2025.

16.    On April 24, 2025, a Motion to Extend Bar Date for Trustee to File Proof of Claim was filed by an Interested Party David K. Gottlieb, Chapter 7 Trustee for the Bankruptcy Estate of Philip M. Lawrence, II [docket no.: 41, as amended by docket no 43]. The hearing is set for May 20, 2025 at 10:00 a.m.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

17.    The claims bar date was April 25, 2025. The court has not set a deadline for filing any objections to the claims.

18.    Debtor filed this case in order to reduce its obligations, resolve the pending lawsuits, and to reorganize.

19.    The following is an estimate of the administrative claims that will be incurred and unpaid through the Effective Date of the Plan and their treatment under this Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| Michael Jay Berger (Debtor's bankruptcy counsel) | $75,000.00 (estimated); subject to court approval. | To be paid upon approval of the fee application, unless agreed otherwise. |
| Gregory K. Jones (Subchapter V Trustee) | $10,000.00 (estimated); subject to court approval | To be paid upon approval of the fee application, unless agreed otherwise. |
| Tipalti, Inc. | $12,500.00 [POC #11]; 11 U.S.C. Section 507(a)(2) | To be paid on the effective date. |
| Center West | $63,480.37 (post-petition administrative rent claim) | To be paid on the effective date. |

20.    Debtor's priority creditors, based on filed claims, are:

(1) IRS with an estimated $4.1 million dollar claim (Claim No. 1-1) which is based on estimated taxes for unfiled WT-FICA, and corporate and federal tax returns. Debtor is working to get the unfiled forms filed and anticipate that the claim will be significantly

28

reduced.  The reduced priority amount will be paid in full within 5 years from the petition date at the applicable interest rate.

(2) Franchise Tax Board with a priority claim in the amount of $2,531.33 [POC #2].  Debtor proposes to pay FTB's priority claim in full at 7% interest rate over 12 months, with the first amortized payment of $219.03 due on the Effective Date, followed by 11 consecutive payments thereafter, each in the amount of $219.03 until the priority claim is paid in full.

(3) Los Angeles County Treasurer and Tax Collector with a priority claim in the amount of $281.00 [POC #15]. Debtor proposes to pay the $281.00 priority claim in one lump-sum payment on the Effective Date.

See **Exhibit B-2** for the list of priority tax claims and their treatment under the Plan.

21.    Connection Financial Services ("CFS") holds a claim secured by UCC-1 Financing Statement filed against certain Microsoft display solutions software, parts, accessories, attachments for an estimated claim of $15,196.00 (the "Property").

22.    Debtor proposes to pay CFS's $15,196.00 secured claim in full over 5 years from the petition date. The first monthly payment of $253.26 will be due on the Effective Date, followed by 59 consecutive payments, each in the amount of $253.26 thereafter until the claim is paid in full. See **Exhibit B-1.**

23.    I do not hold a pre-petition or a post-petition claim against the Debtor.

24.    Thomas St. John Group, Inc. owns a 100% equity ownership interest in the Debtor and will retain its interest following the plan confirmation. See **Exhibit B-4.**

25.    The Debtor will fund the Plan from the continued operation of its business. See **Exhibit-C.**

26.    I shall act as the disbursing agent for the purpose of making the distributions to all classes provided for under the Plan. I will not be compensated for performing these services.

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

1        I declare under penalty of perjury under the laws of the United States of America

2    that the foregoing is true and correct.

3        Executed this April 29, 2025 in ENCINO California.

4

5

6

7    _____

8    Thomas St. John

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

# EXHIBIT-A

## (Assets of Debtor and Valuation as of Plan Confirmation)

# EXHIBIT - A
## LIST OF ALL PROPERTY OF THE ESTATE AND VALUATIONS AS OF THE PLAN CONFIRMATION DATE

| Property Description | Valuation As of Plan Confirmation | Liquidation Value |
|---|---|---|
| Estimated balance in the debtor-in-possession accounts | $100,000.00 | $100,000.00 |
| Accounts Receivable | $1,975,814.34 | $560,681.04 (Debtor does not anticipate collecting appx. $1,415,133.30 in receivables which are more than 90 days old and disputed by clients) |
| Intercompany Receivable | $128,265.00 | $128,265.00 |
| Potential Recovery from the Estate of Philip Lawrence II (currently in Chapter 7 Bankruptcy administered by David Gottlieb) | 2,304,259.00 [POC #33 filed in Philip Lawrence's bankruptcy case #1:23-bk-11082-VK). | Unknown at this time. |
| *Total Value for the Assets* | **$4,418,338.34** | **$788,946.04** |

**EXHIBIT-B**

**EXHIBIT B-1**

**(Secured Claims)**

**EXHIBIT B-1**
**SECURED CLAIMS**
**THOMAS ST. JOHN, INC./ CASE NO.: 2:25-bk-11641-BR**

| Secured Creditors | Class | Scheduled Amount | Proof of Claim Amount | Pre-Petition Arrearages | Disputed Yes/No | Total Allowed Secured Claim | Amount Paid on the Effective Date (Estimated to be September 2030) | Amount Paid After the Effective Date | Comments |
|---|---|---|---|---|---|---|---|---|---|
| Connection Financial Services | 2 | $15,196.00 | POC not filed | $0.00 | No | $15,196.00 | $253.26 | $253.26 | |
| **Total Liabilities** | | $15,196.00 | $0.00 | $0.00 | | $15,196.00 | $253.26 | $253.26 | |

**EXHIBIT B-2**

**(Priority Unsecured Claims)**

**EXHIBIT B-2**

**PRIORITY UNSECURED CLAIMS AND ADMINISTRATIVE CLAIMS**

**THOMAS ST. JOHN, INC./ CASE NO.: 2:25-bk-11641-BR**

| Priority Creditors | Class | Scheduled Amount | Proof of Claim Amount | Disputed Yes/No | Total Amount of Allowed Priority Unsecured Claim | Amount Paid on the Effective Date (Estimated to be September 2030) | Amount Paid After the Effective Date | Comments |
|---|---|---|---|---|---|---|---|---|
| Internal Revenue Service, PO Box 7346 Philadelphia, PA 19101 [POC #1] | n/a | not scheduled | $4,088,198.33 | No | TBD | TBD | TBD | IRS with an estimated $4.1 million dollar claim (Claim No. 1-1) which is based on estimated taxes for unfiled WT-FICA, and corporate and federal tax returns. Debtor is working to get the unfiled forms filed and anticipate that the claim will be significantly reduced. The reduced priority amount will be paid in full within 5 years from the petition date at the applicable interest rate. |
| Franchise Tax Board Bankruptcy Section MS A340, PO Box 2952 Sacramento, CA 95812 [POC #2] | n/a | not scheduled | $2,531.33 | No | $2,531.33 | $219.03 | $219.03 | Debtor proposes to pay FTB's priority claim in full at 7% interest rate over 12 months, with the first amortized payment of $219.03 due on the Effective Date, followed by 11 consecutive payments thereafter, each in the amount of $219.03 until the priority claim is paid in full. |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Los Angeles County Treasurer and Tax Collector [POC #15] | n/a | not scheduled | $281.00 | No | $281.00 | $281.00 | n/a | one-time payment in full on the effective date + any interest that may be due by then. |
| Tipalti, Inc. [POC #11] | n/a | not scheduled as priority | $12,500.00 | No | $12,500.00 | $12,500.00 | n/a | one-time payment in full on the effective date |
| *Total Liabilities* | | $0.00 | $4,103,510.66 | | $15,312.33 | $13,000.00 | $219.03 | |



Mortgage Calculator — Auto Loan Calculator — Loan Calculator — Refinance Calculator — Business Loan Calculator

# Loan Amortization Calculator

Are you interested in getting a loan, but you want to know what it will cost you first? Are you looking at a personal loan offer and wondering how much you'll save on interest if you use it to consolidate your credit cards? If so, you can use this loan calculator to answer these questions. Enter your loan amount, interest rate, term, and start date, and this calculator will give you all the information you need nearly instantaneously! You can use this calculator for most loans, including auto loans, personal loans, mortgages, and more! Before you take the money from your lender, see precisely how much it's going to cost you.

**Loan Amount:**

$ 2,531

**Interest Rate:**

7 %

**Loan Term:**

12 months

**Start Date:**

Sep 2025

**$219.03**
Monthly Payment

**$97**
Total Interest Paid

**$2,628**
Total of 12 Payments



Sep, 2025
Loan Closing

Aug, 2026
Loan Payoff

## Amortization Schedule

| Date | Interest | Principal | Balance |
|------|----------|-----------|---------|
| Sep, 2025 | $15 | $204 | $2,327 |
| Oct, 2025 | $14 | $205 | $2,122 |
| Nov, 2025 | $12 | $207 | $1,915 |
| Dec, 2025 | $11 | $208 | $1,707 |
| **2025** | **$52** | **$824** | **$1,707** |
| Jan, 2026 | $10 | $209 | $1,498 |
| Feb, 2026 | $9 | $210 | $1,288 |
| Mar, 2026 | $8 | $212 | $1,076 |
| Apr, 2026 | $6 | $213 | $863 |
| May, 2026 | $5 | $214 | $649 |
| Jun, 2026 | $4 | $215 | $434 |
| Jul, 2026 | $3 | $216 | $218 |
| Aug. 2026 | $1 | $218 | $0 |
| **2026** | **$45** | **$1,707** | **$0** |

# Frequently Asked Questions

### How to get a loan?

The process for getting a loan depends mostly on what its purpose is. If you're looking for a debt consolidation loan, for example, you'll need to apply with a bank and provide the list of creditors (and the amounts) that this loan will pay off. If you're looking for a loan to finance a vacation or another large purchase, you'll need to apply with some other documentation.

No matter which loan you choose, the process tends to be the same. You'll apply with a bank, credit union, or another lender type. The lender will likely pull your credit report and see if you meet the qualifications for the loan. If you do, you'll receive an offer for a specific sum of money at an APR. Once you accept that offer, the lender will send the funds your way!

### How to get a loan with bad credit?

If you're looking for a loan with bad credit, the first thing you should know is that it is very much possible to get one! People often assume that lenders will deny them, and they don't even bother applying if they have bad credit. However, as with most financial products, there's a lot more than just your credit score that goes into a credit decision.

If you have bad credit, you should first look at some well-known lenders who work with people who have bad credit. Many lenders will provide loans to people with credit scores as low as 580. Therefore, the application process is simple: check your credit score, find a lender that works with lower scores, and apply online or over the phone! Please note that you may have a high APR with a low credit score, so use a loan calculator like this one to ensure taking the loan is a wise financial choice!

### How to calculate interest on a loan?

You can calculate interest on a loan in one of two ways. The easiest way is to use a loan calculator. With these handy online tools, you'll enter some necessary information and get all the vital information, such as the monthly payment and total interest cost, right away.

However, it is possible to calculate the interest on a personal loan manually. Most loans use the simple interest method. With this method, you'd take the interest rate and divide it by the number of payments you must make per year (usually, this is 12). You'd then multiply it by the balance remaining. This amount would be the interest you'd pay for the month. As a quick example, if you owe $10,000 at 6% per year, you'd divide 6% by 12 and multiply that by $10,000. The amount is 0.5% * $10,000 = $50.

If you pay $500 in the month, $450 will go to the principal, and $50 to interest. The next month's interest would be 0.5% * $9,550 = $47.75.

# EXHIBIT B-3

## (General Unsecured Claims)

## EXHIBIT B-3
## GENERAL UNSECURED CLAIMS
### THOMAS ST. JOHN, INC./ CASE NO.: 2:25-bk-11641-BR
### DEBTOR IS PROPOSING A "POT" PLAN AND DISTRIBUTION TO
### UNSECURED CREDITORS WILL BE DETERMINED AFTER PRIORITY
### ALLOWED CLAIMS AND ADMINISTRATIVE CLAIMS ARE TREATED

| General Unsecured Creditors | Class | Scheduled Amount | Proof of Claim Amount | Disputed Yes/No | Total Amount of Allowed Unsecured Claim | Amount Paid on the Effective Date (Estimated to be September 2030) | Amount Paid After the Effective Date | Comments |
|---|---|---|---|---|---|---|---|---|
| Agicap SAS | 3 | $17,541.48 | Proof of Claim Not Filed. | No | $17,541.48 | | | |
| AMB Industry Group LLC | 3 | $77,478.00 | Proof of Claim Not Filed. | No | $77,478.00 | | | |
| American Arbitration Association | 3 | $53,675.00 | Proof of Claim Not Filed. | No | $53,675.00 | | | |
| Canon Financial Services Inc. | 3 | $750.00 | Proof of Claim Not Filed. | No | $750.00 | | | |
| Carlo Davoody [POC #9] | 3 | Unknown | $54,157.94 | Yes | $54,157.97 | | | |
| Center West [POC #10 and #12] | 3 | $439,965.64 | $935,145.56 | Yes | TBD | | | Debtor disputes the total for claims #10 and #12 because the security deposit of $394,235.55 has not been applied by the landlord to reduce the total amount of the claim. |
| CSC Corporate Domains, Inc. | 3 | $950.00 | Proof of Claim Not Filed. | No | $950.00 | | | |
| Cypress Premium Funding | 3 | $162,808.95 | Proof of Claim Not Filed. | No | $162,808.95 | | | |
| Datafaction Inc. | 3 | $15,000.00 | Proof of Claim Not Filed. | No | $15,000.00 | | | |

| Creditor | | Scheduled | Proof of Claim | Disputed | Claim Amount | Comments |
|---|---|---|---|---|---|---|
| DE 16830, LLC | 3 | $18,323.78 | $41,237.64 | | $20,842.23 | Claim filed for $41,237.64, out of which $14,310.59 is classified as a secured claim because of the security deposit held by DE 16830, LLC, thus reducing the total claim amount to $20,842.23. |
| Philip M. Lawrence II [POC #8] | 3 | Not Scheduled | $696,342.96 | Yes | TBD | Debtor disputes the claim and will be filing an objection. |
| Estate of Philip M. Lawrene II [POC #14] | 3 | Not Scheduled | TBD | Yes | TBD | Claim filed by Chapter 7 Trustee as TBD. |
| Exclaimer LTD | 3 | $1,668.00 | Proof of Claim Not Filed. | No | $1,668.00 | |
| Ideals Solutions Group | 3 | $2,340.00 | Proof of Claim Not Filed. | No | $2,340.00 | |
| Jackson Lewis P.C. [POC #3] | 3 | $292,890.00 | $340,454.70 | No | $340,454.70 | |
| Klar Consulting LLC [POC #4] | 3 | $210,800.00 | $210,800.00 | No | $210,800.00 | |
| Leaf Capital Funding, LLC [POC #6] | 3 | $155,841.00 | $179,570.55 | No | $179,570.55 | |
| Maintech, Inc. | 3 | $21,617.86 | Proof of Claim Not Filed. | No | $21,617.86 | |
| Nonyelum Nwasike [POC #5] | 3 | Unknown | $8,000,000.00 | Yes | TBD | Debtor disputes Nwasike's claim and will be filing an objection. |
| Paracorp | 3 | $1,432.00 | Proof of Claim Not Filed. | No | $1,432.00 | |
| Rust August & Kabat | 3 | $116,864.91 | Proof of Claim Not Filed. | No | $116,864.91 | |
| Sheridan Group | 3 | $50,496.67 | Proof of Claim Not Filed. | No | $50,496.67 | |
| Silver Sea Analytics Co. | 3 | $2,420.00 | Proof of Claim Not Filed. | No | $2,420.00 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Sklar Kirsh, LLP | 3 | $6,000.00 | Proof of Claim Not Filed. | No | $6,000.00 | | | |
| Thomas St. John Group Inc. | 3 | $40,593.00 | Proof of Claim Not Filed. | No/Insider | $40,593.00 | | | No distribution will be made to Thomas St. John Group Inc. because it is an insider of the Debtor and the Plan is not going to pay 100% dividends to general unsecured creditors. |
| Thomas St. John Limited | 3 | $122,278.00 | Proof of Claim Not Filed. | No/Insider | $122,278.00 | n/a | n/a | No distribution will be made to Thomas St. John Limited. because it is an insider of the Debtor and the Plan is not going to pay 100% dividends to general unsecured creditors. |
| Thomas St. John Sweden AB | 3 | $7,104.00 | Proof of Claim Not Filed. | No/Insider | $7,104.00 | n/a | n/a | No distribution will be made to Thomas St. John Sweden AB because it is an insider of the Debtor and the Plan is not going to pay 100% dividends to general unsecured creditors. |
| Tipalti Inc | 3 | $11,086.47 | $13,777.88 | No | $13,777.78 | | | |
| Vinci Legal LTD | 3 | $2,425.00 | Proof of Claim Not Filed. | No | $2,425.00 | | | |
| Wayne Kamemoto | 3 | Unknown | $796,909.60 | Yes | TBD | | | Debtor disputes the claim and intends to object to it. |
| Wolters Kluwer | 3 | $42,582.00 | Proof of Claim Not Filed. | No | $42,582.00 | | | |
| Zoom Video Communications | 3 | $5,922.49 | Proof of Claim Not Filed. | No | $5,922.49 | | | |
| Franchise Tax Board | 3 | Not Scheduled | $214.01 | No | $214.01 | | | |
| Urbana Chapa Lawrence | 3 | Not Scheduled | Proof of Claim Not Filed. | Yes | TBD | | | Debtor disputes the claim. |
| **Total Liabilities** | | $1,880,854.25 | $11,268,610.84 | | $1,571,764.60 | | | |

# EXHIBIT B-4

## (List of Equity Interest Holders)

# EXHIBIT B-4
## INTEREST HOLDERS
### THOMAS ST. JOHN, INC./ CASE NO.: 2:25-bk-11641-BR

| INTEREST HOLDERS | Class | Scheduled Amount | Claimed Amount | Disputed Yes/No | Total Amount of Allowed Unsecured Claim | Amount Due on Effective Date | Amount Paid After the Effective Date | Comments |
|---|---|---|---|---|---|---|---|---|
| Thomas St. John Group, Inc. | Class 4 | None | N/A | No | N/A | N/A | N/A | Thomas St. John Group, Inc. is a 100% owner of Debtor. It will retain its interest in the Debtor. |
| Total Liabilities | | | N/A | | | | | |

**EXHIBIT-C**

**(5-year projections)**

## Income Statement

| Main Forecast - Thomas St John, Inc. | Effective Date | Oct 2025 | Nov 2025 | Dec 2025 | Jan 2026 | Feb 2026 | Mar 2026 | Apr 2026 | May-26 | Jun-26 | Jul-26 | Aug-26 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | |
| **Services** | | | | | | | | | | | | | |
| Estimated Value of the DIP Account on the Effective Date | $150,000 | | | | | | | | | | | | |
| Retainers | $158,297 | $159,163 | $160,046 | $160,947 | $161,866 | $162,804 | $163,760 | $164,735 | $155,000 | $155,800 | $156,616 | $157,448 | $1,916,484 |
| Add-on/option | $47,211 | $48,108 | $49,025 | $49,963 | $50,922 | $51,903 | $52,907 | $53,933 | $43,819 | $44,639 | $45,477 | $46,334 | $584,240 |
| Projects - Ad hoc | $70,000 | $50,000 | $50,000 | $50,000 | $50,000 | $50,000 | $50,000 | $50,000 | $127,000 | $50,000 | $50,000 | $50,000 | $697,000 |
| **Total Services** | $425,508 | $257,271 | $259,071 | $260,910 | $262,788 | $264,707 | $266,666 | $268,668 | $325,819 | $250,439 | $252,093 | $253,783 | $3,197,724 |
| **Materials (Products)** | | | | | | | | | | | | | |
| Software recharges | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $54,000 |
| **Total Revenue** | $430,008 | $261,771 | $263,571 | $265,410 | $267,288 | $269,207 | $271,166 | $273,168 | $330,319 | $254,939 | $256,593 | $258,283 | $3,251,724 |
| **Cost of Goods Sold** | | | | | | | | | | | | | |
| **Direct Labor (Insiders)** | | | | | | | | | | | | | |
| Partner labor cost | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $240,000 |
| **Direct Labor (non-insiders)** | | | | | | | | | | | | | |
| Professional staff labor cost | $31,164 | $31,164 | $31,164 | $31,164 | $31,164 | $31,164 | $31,164 | $31,164 | $31,164 | $31,164 | $31,164 | $31,164 | $373,972 |
| Associates | $62,200 | $62,200 | $62,200 | $62,200 | $62,200 | $62,200 | $62,200 | $62,200 | $62,200 | $62,200 | $62,200 | $62,200 | $746,402 |
| Non-qualified support staff | $5,091 | $5,091 | $5,091 | $5,091 | $5,091 | $5,091 | $5,091 | $5,091 | $5,091 | $5,091 | $5,091 | $5,091 | $61,088 |
| Account management | $25,379 | $25,379 | $25,379 | $25,379 | $25,379 | $25,379 | $25,379 | $25,379 | $25,379 | $25,379 | $25,379 | $25,379 | $304,542 |
| **Total Direct Labor (non-insiders)** | $123,834 | $123,834 | $123,834 | $123,834 | $123,834 | $123,834 | $123,834 | $123,834 | $123,834 | $123,834 | $123,834 | $123,834 | $1,486,004 |
| **Outside vendors/consultants** | | | | | | | | | | | | | |
| Outsourced vendors/consultants | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $48,000 |
| Company secretarial services | $1,089 | $1,089 | $1,089 | $1,089 | $2,201 | $2,456 | $1,425 | $1,799 | $1,089 | $1,089 | $1,089 | $1,089 | $16,595 |
| Cross office direct costs | $13,086 | $12,826 | $12,567 | $12,308 | $12,048 | $11,789 | $11,529 | $11,271 | $14,124 | $13,864 | $13,605 | $13,345 | $152,361 |
| **Total Outside vendors/consultants** | $18,175 | $17,916 | $17,656 | $17,397 | $18,249 | $18,245 | $16,954 | $17,069 | $19,213 | $18,953 | $18,694 | $18,435 | $216,956 |
| **Total Cost of Goods Sold** | $162,009 | $161,749 | $161,490 | $161,230 | $162,088 | $162,079 | $160,788 | $160,903 | $163,047 | $162,787 | $162,528 | $162,268 | $1,942,960 |
| **Gross Profit** | $268,000 | $100,022 | $102,081 | $104,180 | $105,205 | $107,128 | $110,379 | $112,265 | $167,273 | $92,152 | $94,065 | $96,014 | $1,308,764 |
| **Expenses** | | | | | | | | | | | | | |
| **Sales & Marketing** | | | | | | | | | | | | | |
| Marketing costs | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| **Administrative employee salaries** | | | | | | | | | | | | | |
| Admin staff salaries | $14,250 | $14,250 | $14,250 | $14,250 | $14,250 | $14,250 | $14,250 | $14,250 | $14,250 | $14,250 | $14,250 | $14,250 | $171,000 |
| Admin staff employer taxes | $1,056 | $1,056 | $1,056 | $1,056 | $1,056 | $1,056 | $1,056 | $1,056 | $1,056 | $1,056 | $1,056 | $1,056 | $12,676 |
| Admin staff contribution expense | $651 | $651 | $651 | $651 | $651 | $651 | $651 | $651 | $651 | $651 | $651 | $651 | $7,808 |
| **Total Administrative employee salaries** | $15,957 | $15,957 | $15,957 | $15,957 | $15,957 | $15,957 | $15,957 | $15,957 | $15,957 | $15,957 | $15,957 | $15,957 | $191,484 |
| **Office rent** | | | | | | | | | | | | | |
| Office rent | $0 | $0 | $0 | $0 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $120,000 |
| **Total Office rent** | $0 | $0 | $0 | $0 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $120,000 |
| **General & administrative costs** | | | | | | | | | | | | | |
| Group services (HR, Finance, IT s... | $11,696 | $12,754 | $13,900 | $15,142 | $16,487 | $17,944 | $16,605 | $14,690 | $8,218 | $986 | $9,818 | $10,719 | $148,957 |
| Postage & Courier | $523 | $520 | $507 | $497 | $490 | $460 | $487 | $474 | $598 | $588 | $530 | $492 | $6,167 |
| Doc security/storage | $40 | $43 | $47 | $51 | $55 | $60 | $65 | $70 | $168 | $181 | $94 | $37 | $911 |
| Office equipment repairs | $12 | $12 | $14 | $15 | $16 | $17 | $19 | $20 | $39 | $42 | $46 | $11 | $262 |
| Office maintenance expenses | $156 | $169 | $183 | $202 | $207 | $207 | $170 | $171 | $149 | $158 | $165 | $164 | $2,081 |
| Employee welfare | $993 | $827 | $863 | $831 | $783 | $648 | $702 | $743 | $721 | $781 | $846 | $917 | $9,656 |
| Gifts | $60 | $56 | $43 | $47 | $37 | $40 | $43 | $47 | $52 | $56 | $61 | $66 | $607 |
| Books & publications | $8 | $9 | $10 | $11 | $11 | $12 | $13 | $14 | $22 | $24 | $26 | $28 | $188 |
| Miscellaneous Expense | $326 | $343 | $372 | $403 | $436 | $454 | $437 | $457 | $861 | $698 | $613 | $545 | $5,945 |
| Office equipment rental | $488 | $529 | $573 | $621 | $673 | $729 | $789 | $568 | $355 | $384 | $416 | $451 | $6,576 |
| **Total General & administrative costs** | $14,302 | $15,263 | $16,512 | $17,803 | $19,190 | $20,571 | $19,329 | $17,255 | $11,182 | $3,898 | $12,615 | $13,430 | $181,350 |
| Insurance | | | | | | | | | | | | | |

| Item | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Travel Insurance | $192 | $208 | $86 | $93 | $101 | $109 | $119 | $128 | $140 | $151 | $164 | $177 | $1,669 |
| Property insurance | $342 | $334 | $324 | $313 | $339 | $330 | $321 | $310 | $361 | $357 | $352 | $347 | $4,030 |
| D&O Insurance | $145 | $157 | $170 | $184 | $200 | $216 | $234 | $254 | $591 | $493 | $386 | $270 | $3,301 |
| Cyber Liability Insurance | $166 | $180 | $195 | $211 | $229 | $248 | $268 | $291 | $677 | $564 | $442 | $309 | $3,779 |
| E&O Insurance | $22,371 | $22,371 | $22,371 | $22,371 | $22,371 | $22,371 | $22,371 | $22,371 | $22,371 | $22,371 | $22,371 | $22,371 | $268,450 |
| Life Insurance | $290 | $315 | $341 | $369 | $400 | $433 | $469 | $509 | $211 | $228 | $247 | $268 | $4,081 |
| Workers Comp Insurance | $1,409 | $1,389 | $1,367 | $1,343 | $1,317 | $1,152 | $1,110 | $1,202 | $1,378 | $1,227 | $1,318 | $1,428 | $15,632 |
| **Total Insurance** | $24,916 | $24,953 | $24,853 | $24,885 | $24,957 | $24,860 | $24,892 | $25,065 | $25,728 | $25,381 | $25,280 | $25,172 | $300,942 |
| **Travel and Accommodation Costs** | | | | | | | | | | | | | |
| Domestic travel | $617 | $573 | $601 | $630 | $427 | $462 | $499 | $522 | $616 | $646 | $625 | $570 | $6,788 |
| International travel | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $24,000 |
| **Total Travel and Accommodation Cos** | $2,617 | $2,573 | $2,601 | $2,630 | $2,427 | $2,462 | $2,499 | $2,522 | $2,616 | $2,646 | $2,625 | $2,570 | $30,788 |
| **Software & Communication Costs** | | | | | | | | | | | | | |
| IT repairs & maint. | $5,585 | $5,585 | $5,585 | $5,585 | $5,585 | $5,585 | $5,585 | $5,585 | $5,585 | $5,585 | $5,585 | $5,585 | $67,018 |
| Website/Domain costs | $291 | $297 | $271 | $294 | $318 | $316 | $333 | $300 | $308 | $328 | $356 | $385 | $3,797 |
| Software licenses | $16,538 | $17,177 | $16,567 | $17,121 | $17,752 | $17,193 | $16,854 | $16,244 | $16,122 | $16,508 | $16,602 | $15,820 | $200,500 |
| Telephone & Internet | $2,141 | $1,936 | $1,870 | $1,809 | $1,892 | $1,978 | $2,051 | $2,077 | $2,856 | $2,726 | $2,508 | $2,338 | $26,181 |
| **Total Software & Communication Cos** | $24,555 | $24,995 | $24,293 | $24,808 | $25,547 | $25,072 | $24,212 | $24,815 | $24,872 | $25,148 | $25,051 | $24,128 | $297,495 |
| **Legal and Professional Fees** | | | | | | | | | | | | | |
| Legal fees | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $30,000 |
| Other Professional fees | $1,205 | $1,305 | $1,414 | $1,249 | $1,353 | $1,466 | $996 | $1,079 | $875 | $948 | $1,027 | $1,112 | $14,029 |
| **Total Legal and Professional Fees** | $3,705 | $3,805 | $3,914 | $3,749 | $3,853 | $3,966 | $3,496 | $3,579 | $3,375 | $3,448 | $3,527 | $3,612 | $44,029 |
| **Staff Training** | | | | | | | | | | | | | |
| Professional development | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $48,000 |
| Annual subscription Fees | $9 | $10 | $11 | $12 | $13 | $14 | $15 | $16 | $46 | $50 | $8 | $9 | $212 |
| **Total Staff Training** | $4,009 | $4,010 | $4,011 | $4,012 | $4,013 | $4,014 | $4,015 | $4,016 | $4,046 | $4,050 | $4,008 | $4,009 | $48,212 |
| **Total Expenses** | $95,061 | $96,556 | $97,141 | $98,844 | $115,944 | $116,901 | $114,401 | $113,210 | $107,774 | $100,527 | $109,062 | $108,877 | $1,274,299 |
| **Operating Profit** | $172,938 | $3,465 | $4,940 | $5,335 | ($10,739) | ($9,773) | ($4,023) | ($944) | $59,498 | ($8,375) | ($14,997) | ($12,862) | $34,464 |
| **Other Expenses** | | | | | | | | | | | | | |
| **Finance Costs** | | | | | | | | | | | | | |
| Bank charges | $130 | $134 | $138 | $142 | $147 | $151 | $155 | $159 | $113 | $117 | $122 | $126 | $1,634 |
| **Earnings Before Interest & Tax** | $172,808 | $3,331 | $4,802 | $5,193 | ($10,885) | ($9,924) | ($4,177) | ($1,103) | $59,385 | ($8,493) | ($15,119) | ($12,988) | $182,831 |
| **Plan Payments** | | | | | | | | | | | | | |
| Secured Creditor CFS (Class 2) | $253.26 | $253.26 | $253.26 | $253.26 | $253.26 | $253.26 | $253.26 | $253.26 | $253.26 | $253.26 | $253.26 | $253.26 | $3,039 |
| General Unsecured Creditors (Class 3) | TBD* | | | | | | | | | | | | |
| Priority Tax Claim - IRS | TBD** | | | | | | | | | | | | |
| Priority Tax Claim - FTB | $219.03 | $219.03 | $219.03 | $219.03 | $219.03 | $219.03 | $219.03 | $219.03 | $219.03 | $219.03 | $219.03 | $219.03 | $2,628 |
| Priority Tax Claim - Los Angeles | $281.00 | | | | | | | | | | | | $281 |
| County Tax Collector | | | | | | | | | | | | | |
| Priority Administrative Claim: Tipathi, Inc. | $12,500.00 | | | | | | | | | | | | $12,500 |
| Priority Administrative Claim: Center West | $63,480.37 | | | | | | | | | | | | $63,480 |
| Law Offices of Michael Jay Berger (estimated fees, subject to Court approval) | $75,000.00 | | | | | | | | | | | | $75,000 |
| Subchapter V Trustee (estimated fees, subject to Court approval) | $10,000.00 | | | | | | | | | | | | $10,000 |
| **Total Plan Payments** | $161,734 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $166,929 |
| **Net Income** | $11,075 | $2,859 | $4,330 | $4,720 | ($11,358) | ($10,396) | ($4,650) | ($1,576) | $58,913 | ($8,965) | ($15,591) | ($13,460) | $15,902 |
| **Retained Income** | $11,075 | $2,859 | $4,330 | $4,720 | ($11,358) | ($10,396) | ($4,650) | ($1,576) | $58,913 | ($8,965) | ($15,591) | ($13,460) | $15,902 |

*Debtor is proposing a pot plan, and a pro rata distribution to General Unsecured Creditors will be available at a later date.

**Liability is estimated based on unfiled returns and Debtor anticipates that the claim will be significantly reduced. The Reduced priority amount will be paid within five years of the petition date at the applicable interest rate.

# Income Statement

| Main Forecast - Thomas St John, Inc. | Aug-27 | Aug-28 | Aug-29 | Aug-30 |
|---|---|---|---|---|
| **Revenue** | | | | |
| **Services** | | | | |
| Retainers | $2,008,576 | $2,177,186 | $2,291,025 | $2,562,224 |
| Add-on/option | $681,021 | $863,504 | $1,103,762 | $1,321,050 |
| Projects - Ad hoc | $600,000 | $600,000 | $600,000 | $600,000 |
| **Total Services** | **$3,289,597** | **$3,640,691** | **$3,994,788** | **$4,483,274** |
| **Materials (Products)** | | | | |
| Software recharges | $54,000 | $54,000 | $54,000 | $54,000 |
| **Total Revenue** | **$3,343,597** | **$3,694,691** | **$4,048,788** | **$4,537,274** |
| **Cost of Goods Sold** | | | | |
| **Direct Labor (Insiders)** | | | | |
| Partner labor cost | $240,000 | $247,200 | $254,616 | $262,254 |
| **Direct Labor (non-insiders)** | | | | |
| Professional staff labor cost | $417,602 | $553,479 | $774,870 | $1,084,818 |
| Associates | $747,270 | $769,688 | $792,779 | $816,562 |
| Non-qualified support staff | $62,907 | $64,795 | $66,739 | $68,741 |
| Direct labor support costs | $0 | $0 | $0 | $0 |
| Account management | $320,114 | $348,366 | $379,442 | $413,627 |
| **Total Direct Labor (non-insiders)** | **$1,547,894** | **$1,736,327** | **$2,013,830** | **$2,383,748** |
| **Outside vendors/consultants** | | | | |
| Outsourced vendors/consultants | $48,000 | $49,440 | $50,923 | $52,451 |
| Company secretarial services | $25,309 | $38,380 | $51,451 | $64,521 |
| Cross office direct costs | $127,454 | $90,094 | $52,733 | $15,519 |
| **Total Outside vendors/consultants** | **$200,763** | **$177,914** | **$155,107** | **$132,491** |
| **Total Cost of Goods Sold** | **$1,988,657** | **$2,161,441** | **$2,423,554** | **$2,778,494** |
| **Gross Profit** | **$1,354,940** | **$1,533,250** | **$1,625,234** | **$1,758,780** |
| **Expenses** | | | | |
| **Sales & Marketing** | | | | |
| Marketing costs | $60,000 | $60,000 | $60,000 | $60,000 |
| **Administrative employee salaries** | | | | |
| Admin staff salaries | $171,000 | $176,130 | $181,414 | $186,856 |
| Admin staff employer taxes | $12,676 | $13,056 | $13,448 | $13,851 |
| Admin staff contribution expense | $7,808 | $8,042 | $8,284 | $8,532 |
| **Total Administrative employee salaries** | **$191,484** | **$197,228** | **$203,145** | **$209,240** |
| **Office rent** | | | | |
| Office Rent | $180,000 | $300,000 | $309,000 | $318,270 |
| **Total Office rent** | **$180,000** | **$300,000** | **$309,000** | **$318,270** |
| **General & administrative costs** | | | | |
| Group services (HR, Finance, IT suppo | $161,400 | $187,346 | $187,136 | $187,175 |
| Postage & Courier | $5,911 | $5,945 | $5,948 | $5,947 |
| Doc security/storage | $746 | $742 | $739 | $738 |
| Office equipment repairs | $218 | $218 | $217 | $217 |
| Office maintenance expenses | $2,179 | $2,154 | $2,154 | $2,154 |
| Employee welfare | $9,266 | $9,409 | $9,426 | $9,426 |
| Gifts | $553 | $567 | $568 | $567 |

| | | | | |
|---|---|---|---|---|
| Books & publications | $161 | $162 | $162 | $162 |
| Miscellaneous Expense | $5,354 | $5,326 | $5,316 | $5,315 |
| Office equipment rental | $7,508 | $7,334 | $7,323 | $7,324 |
| **Total General & administrative costs** | **$193,299** | **$219,202** | **$218,988** | **$219,027** |
| **Insurance** | | | | |
| Travel Insurance | $1,514 | $1,547 | $1,547 | $1,546 |
| Property insurance | $3,943 | $3,939 | $3,940 | $3,940 |
| D&O Insurance | $2,746 | $2,739 | $2,730 | $2,729 |
| Cyber Liability Insurance | $3,143 | $3,136 | $3,126 | $3,124 |
| E&O Insurance | $268,450 | $268,450 | $268,450 | $268,450 |
| Life Insurance | $4,788 | $4,684 | $4,671 | $4,670 |
| Workers Comp Insurance | $15,094 | $15,236 | $15,259 | $15,260 |
| **Total Insurance** | **$299,678** | **$299,731** | **$299,722** | **$299,719** |
| **Travel and Accommodation Costs** | | | | |
| Domestic travel | $6,299 | $6,458 | $6,470 | $6,469 |
| International travel | $24,000 | $24,000 | $24,000 | $24,000 |
| **Total Travel and Accommodation Costs** | **$30,299** | **$30,458** | **$30,470** | **$30,469** |
| **Software & Communication Costs** | | | | |
| IT repairs & maint. | $67,018 | $67,018 | $67,018 | $67,018 |
| Website/Domain costs | $3,765 | $3,747 | $3,744 | $3,744 |
| Software licenses | $202,637 | $202,049 | $202,073 | $202,083 |
| Telephone & Internet | $24,469 | $24,543 | $24,521 | $24,516 |
| **Total Software & Communication Costs** | **$297,888** | **$297,357** | **$297,356** | **$297,360** |
| **Legal and Professional Fees** | | | | |
| Legal fees | $30,000 | $30,000 | $30,000 | $30,000 |
| Other Professional fees | $14,642 | $14,560 | $14,579 | $14,583 |
| **Total Legal and Professional Fees** | **$44,642** | **$44,560** | **$44,579** | **$44,583** |
| **Staff Training** | | | | |
| Professional development | $48,000 | $52,800 | $58,080 | $63,888 |
| Annual subscription Fees | $171 | $170 | $169 | $169 |
| **Total Staff Training** | **$48,171** | **$52,970** | **$58,249** | **$64,057** |
| **Total Expenses** | **$1,345,461** | **$1,501,505** | **$1,521,508** | **$1,542,724** |
| **Operating Profit** | **$9,479** | **$31,744** | **$103,726** | **$216,056** |
| **Other Expenses** | | | | |
| **Finance Costs** | | | | |
| Bank charges | $2,034 | $2,634 | $3,234 | $3,834 |
| **Earnings Before Interest & Tax** | **$7,445** | **$29,111** | **$100,492** | **$212,222** |
| **Plan Payments** | | | | |
| Secured Creditor CFS (Class 2) | $253.26 | $253.26 | $253.26 | $253.26 |
| **Total Plan Payments** | **$253** | **$253** | **$253** | **$253** |
| **Net Income** | **$7,192** | **$28,857** | **$100,239** | **$211,969** |
| **Retained Income** | **$7,192** | **$28,857** | **$100,239** | **$211,969** |

**EXHIBIT-D**

**(Monthly Operating Report Summary)**

## Monthly Operating Report Summmary

| MONTH | TOTAL CASH RECEIPTS | TOTAL CASH DISBURSEMENTS | NET CASH FLOW |
|---|---|---|---|
| March 2025 | $319,636.00 | $260,633.00 | $95,023.00 |
| *Total Cash Receipts / Total Cash Disbursements* | *$319,636.00* | *$260,633.00* | *$95,023.00* |

Since the filing of the case, the Debtor vacated the Wilshire and Encino locations and downsized its operation. The Debtor's 5-year projections take into consideration the change in income and expenses as a result of this business restructuring.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6th Fl., Beverly Hills CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S DISCLOSURE
STATEMENT DESCRIBING SUBCHAPTER V CHAPTER 11 PLAN OF
REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required
by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
4/29/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Interested Party: Ron Bender    rb@lnbyg.com
Michael Jay Berger    michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
Interested Party: Debra Brand    dbrand@yaspanlaw.com
Leaf Capital Funding Jennifer Witherell Crastz    jcrastz@hrhlaw.com
Counsel for Center West: Stella A Havkin    stella@havkinandshrago.com, shavkincsq@gmail.com
Subchapter V Trustee: Gregory Kent Jones (TR)    gjones@sycr.com,
smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
Interested Party: Jeffrey S Kwong    jsk@lnbyg.com, jsk@ecf.inforuptcy.com
Interested Party: Matthew A Lesnick    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
U.S. Trustee: Ron Maroko    ron.maroko@usdoj.gov
Interested Parties Howard Ruddell    hruddell@mooreruddell.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will
be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 4/29/2025, I served the following
persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service
method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal
delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Honorable Barry Russell
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/29/2025 | Peter Garza | /s/Peter Garza |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**